Wɪʟᴄᴏx, Plaintiff in error, vs. Tʜᴇ Sᴛᴀᴛᴇ, Defendant in error.*

*February 28—April 8, 1947.*

* Motion for rehearing denied, without costs, on June 10, 1947.

For the plaintiff in error there were briefs by *J. E. O'Brien* of Fond du Lac, and *Orr, Lewis & Orr* of Chicago, Illinois, attorneys, and *Wallace W. Orr* and *Haskell F. Lamm,* both of Chicago, Illinois, of counsel, and oral argument by *Mr. O'Brien* and *Mr. Warren H. Orr.*

For the defendant in error there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

WICKHEM, J. The question upon this appeal is whether the evidence sustains the convictions. Specifically, defendant urges that the evidence fails to establish beyond a reasonable doubt, (1) an intent on his part to inflict great bodily harm, or (2) an intent to aim or discharge a gun at another. The nature of the contentions requires a statement of the facts.

At the time of the incident defendant, thirty-seven years of age, a resident of Springfield, Illinois, was on his way home from a vacation in northern Wisconsin accompanied by his wife. On September 15, 1945, they stopped at Allenton, Wisconsin, to visit with friends, the Ritters. At 2:30 in the afternoon of September 15th defendant and Mr. Ritter went to Goeden's tavern in Allenton. They were joined by their wives for dinner a few hours later, and during the afternoon and evening the four were engaged in playing cards, visiting, and drinking. Thoennes, a local blacksmith, the prosecuting

witness in this case, arrived at Goeden's shortly after 10 o'clock. There was some drinking and visiting, all on a friendly basis. During the course of the conversation the subject of bows and arrows came up. Defendant told Thoennes that he had a bow and arrow in his car and asked Thoennes if he wanted to see it. The two proceeded to defendant's car and looked at the bow. At that time defendant opened a glove compartment, took out a revolver, and stated that he liked to shoot the gun rather than the bow. Defendant and Thoennes went back to the tavern, defendant having returned the gun to the compartment. After playing a game or two of dice, one of which defendant lost, the latter looked for his money to pay for the game and said he was missing a $100 bill. Everybody looked around the floor and then went out and looked around the car but were unable to find the bill. Defendant then invited Thoennes to ride out to Gorman's tavern which was several miles from Goeden's, and Thoennes consented. He was about to get in the car on the right-hand side when defendant directed him to slide under the wheel and sit between defendant and his wife, the latter occupying the driver's seat. After proceeding for some distance defendant's wife turned off the road and stopped the car. Thoennes testified that defendant then pulled out the gun and shot him. The bullet entered Thoennes' body two and one-half inches anterior to the pelvic bone and about three inches below the level of the top of the bone and exited at the lower edge of the sacrum slightly left of the median line, thereafter dropping in between the cushions of the car. After defendant shot he said to Thoennes, "Where is the hundred dollars?" Thoennes denied having the hundred dollars but offered him the $7 that he had in his possession. Defendant and his wife searched Thoennes. They then drove to Gorman's tavern where Thoennes said that defendant "made me get out of the car and go inside;" Thoennes could not walk very well because of the wound. Two persons were present in the tavern—Roland Schmidt and Floyd Murphy.

They noticed and commented upon the fact that Thoennes was bleeding but the latter urged them not to say anything, because he had been shot and he was afraid that defendant would do some more shooting. Thoennes tried to get out of the rear door of the tavern but it was locked. Defendant followed him to the rear door, pointed the gun at his neck, and made him walk into the tavern again. Thoennes, Murphy, and Schmidt testified that defendant threatened to shoot the latter two if they did not shut up and keep out of the business; that defendant's wife searched Thoennes; that defendant threatened to shoot anyone who used the telephone, and that defendant pointed the gun at Thoennes' ear and said that he had drilled him below and was going to drill him on top.

The foregoing facts are substantiated by the record either in the sense that they are undisputed or are established by testimony which the court was entitled to believe. Defendant denied that he ever intentionally discharged the gun; that he ever threatened Thoennes, or that he did anything indicating concern over loss of the money or suspicion that Thoennes had taken it. The money was later found on the front mat of the car. There is some evidence that all of the parties involved in the transaction were drunk, but there is also evidence that none were so much so as to be incapable of forming an unlawful intent or of testifying to the facts here involved. Defendant relies strongly upon *Vosburgh v. State,* 82 Wis. 168, 51 N. W. 1092, where it was pointed out that the gist of a felony created by sec. 340.41, Stats., is the intent to do great bodily harm and that this rather than the result of the act fixes the crime or the degree of crime. However, the trial court was entitled to conclude, (1) that defendant suspected Thoennes of having taken the $100 bill; (2) that in order to get back the money he induced Thoennes to ride out to the other tavern seated between himself and his wife to prevent his escape; (3) that he pointed a revolver toward Thoennes, discharged the gun and wounded him; (4) that he demanded the money im-

mediately after the shooting and in connection with this searched Thoennes; (5) that he pursued these threatening activities into the second tavern by menacing Thoennes and two bystanders with the gun and searching Thoennes. Defendant attacks the testimony as to what happened at the second tavern as being completely without probative value, and of no possible bearing on alleged prior offenses. We cannot assent to this contention. It was a part of the entire transaction and so related in point of time that defendant's conduct, as well as his admissions on that occasion, bear importantly upon the intent involved in the acts for which defendant was prosecuted.

The court was entitled to conclude beyond a reasonable doubt that the whole adventure to the second tavern was for the purpose of inducing Thoennes to return money which defendant thought he had stolen. The revolver was an exhibit and in view of the obvious improbability of accidental discharge as well as the location of the wound the court could properly conclude that defendant intended to discharge the gun. This being true, the physical proximity of defendant to Thoennes and the character of the weapon support beyond reasonable doubt the inference of an intent to do great bodily harm. It is impossible as a matter of law to dismiss the whole incident as a drunken brawl involving the accidental discharge of a weapon or to separate the incident of the lost hundred dollar bill from the events of the evening. The location of the bullet wound supports the testimony of Thoennes that defendant brought the gun around with his right hand and deliberately shot him. The testimony as a whole is the proper basis for a pattern of inferences nearly impossible to escape once the trial court accepted it as true. The testimony is believable and sufficient to establish beyond a reasonable doubt both the charge of intentional aiming or discharging of a gun and that of an assault with intent to do great bodily harm.

*By the Court.*—Judgment affirmed.